UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GIVAUDAN SA,

        Plaintiff,

v.

CONAGEN INC.,

        Defendant.

Civil Action No. 18-3588

**COMPLAINT**

---

Givaudan SA ("Givaudan") alleges as follows for its complaint against Conagen Inc. ("Conagen").

## PARTIES AND NATURE OF THE ACTION

1. Givaudan, a company organized under the laws of Switzerland, is a manufacturer of flavors, fragrances, and active cosmetic ingredients. Its principal place of business is located at 5, Chemin de la Parfumerie, 1214 Vernier, Switzerland.

2. Conagen is a Massachusetts corporation with a principal place of business at 13-15 Deangelo Drive, Bedford, Massachusetts 01730. Conagen is in the business of researching and developing bio-manufacturing processes and techniques.

3. Givaudan and Conagen, along with other affiliates of Conagen and its principal, Steven Chen, have had an ongoing business relationship involving certain investment, licensing, and technology commercialization arrangements.

4. This action concerns Conagen's refusal and failure to negotiate in good faith according to the terms of the parties' term sheet, under which they contemplated a $10 million equity investment by Givaudan in Conagen and a grant of exclusivity from Conagen to Givaudan for certain intellectual property owned by Conagen.

8695802.2

5. In reliance on Conagen's representations and promises, Givaudan advanced $10 million to Conagen in anticipation of negotiating specific terms and entering further agreements, which were to be consistent with the material terms in the parties' term sheet.

6. Conagen refused to negotiate terms consistent with the term sheet, and the transaction was never consummated.

7. Givaudan has accordingly been injured in an amount of more than $10 million, representing the advance payment and Givaudan's wasted effort, expense, and expenditures in reliance on Conagen's representations and promises.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because Givaudan and Conagen are respectively the citizen of a foreign state and the citizen of a State, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Conagen and venue is proper in this Court pursuant to the parties' agreement as to jurisdiction and forum selection, as further set forth below.

## FACTS

10. On or about February 21, 2014, Givaudan and Phyto Tech Corp. d/b/a Blue California ("Blue Cal"), an affiliate of Conagen, entered into an operating agreement to govern BGN Tech LLC (the "LLC Agreement"), a Delaware limited liability company of which Givaudan and Blue Cal were members.

11. The LLC Agreement includes a Delaware choice-of-law provision that reads as follows:

> This Agreement and all claims and causes of action (whether in contract, tort or otherwise) shall be governed by and shall be

        construed in accordance with the laws of the State of Delaware, excluding any conflict-of-laws rule or principle that might refer the governance or the construction of this Agreement to the law of another jurisdiction.

12. The LLC Agreement includes a forum selection clause in Section 14.11 that reads as follows:

        [A]ny legal action, suit or proceeding arising out of or relating to this Agreement, or the breach, termination or validity thereof, shall be instituted in any state or federal court in the State of New York located in the County of New York. Each Party agrees not to assert, by way of motion, as a defense or otherwise, in any such action, suit or proceeding, any claim that it is not subject personally to the jurisdiction of such courts, that its property is exempt or immune from attachment or execution, that the action, suit or proceeding is brought in an inconvenient forum, that the venue of the action, suit or proceeding is improper or that this Agreement, the agreements contemplated hereby or the subject matter hereof or thereof may not be enforced in or by such court. Each Party further irrevocably submits to the exclusive jurisdiction of any such court in any such action, suit or proceeding.

13. On or about July 3, 2015, Conagen and Givaudan entered into a stock purchase agreement under which Givaudan invested $10 million in Conagen in exchange for a five-percent equity interest in Conagen.

14. On or about September 15, 2016, Conagen and Givaudan, along with Conagen's affiliate Phyto Tech Corp., entered into a term sheet (the "Term Sheet") that provided the parties "currently envision that they will negotiate in good faith and enter into one or more arrangements which will contain terms and conditions similar to those detailed below and other terms and conditions negotiated by the parties."

15. The Term Sheet also contained a list of material "Key Terms" that the parties intended to memorialize in subsequent writings with additional terms.

16. Key Term 1 provided that Givaudan would invest an additional $10 million in exchange for an additional five percent equity stake in Conagen.

17. Key Term 2 provided that Conagen would provide Givaudan with exclusive rights in Conagen's specified intellectual property, which exclusivity would convert to non-exclusivity if Givaudan failed to "use reasonable efforts to commercially exploit mature IP, to an industrially viable extent, within 12 months from it being licensed to Givaudan."

18. Key Term 6 provided that the "law and jurisdiction clauses agreed between the parties in the [LLC Agreement] shall apply to the parties and be integrated hereto by reference."

19. The parties accordingly agreed that Delaware law would apply to the Term Sheet and any claims or causes of action relating to or arising out of it, and that any action arising out of or relating to the Term Sheet would be brought in state or federal court located in New York County.

20. In reliance on Key Term 1, Key Term 2, and the other Key Terms in the Term Sheet, as well as Conagen's other representations therein and elsewhere, Givaudan advanced $10 million to Conagen by wire transfer during the week following the execution of the Term Sheet.

21. Givaudan and Conagen subsequently began negotiating agreements based on the Term Sheet.

22. In October 2016, Conagen prepared drafts of an intellectual property licensing agreement, which included a proposed term making Givaudan's intellectual property exclusivity dependent on Givaudan developing certain immature intellectual property to the point of readiness for commercialization.

23. This proposed term was contrary to Key Term 2 of the Term Sheet, which only required that Givaudan use commercially reasonable efforts to exploit mature intellectual property that was ready for commercialization.

24. The only conditions imposed on exclusivity in the Term Sheet were embodied in Key Term 2. Neither Key Term 2 nor any other provision of the Term Sheet required Givaudan to develop any immature intellectual property that was not ready for commercialization.

25. Givaudan provided a revised draft of the intellectual property licensing agreement to Conagen and stated that the draft provided by Conagen was inconsistent with the Term Sheet in that the Conagen draft required Givaudan to develop immature intellectual property that was not ready for commercialization.

26. During negotiations under the Term Sheet between Conagen and Givaudan, Givaudan separately informed Conagen's principal, Steven Chen, that Givaudan would not make further investments in Mr. Chen's other companies.

27. Shortly after Givaudan informed Mr. Chen that it would not invest further in his other companies, Conagen's outside counsel informed Givaudan that Conagen was standing down on negotiations in furtherance of the Term Sheet.

28. No agreements contemplated in the Term Sheet were executed by Conagen and Givaudan.

29. Givaudan subsequently requested that Conagen return the $10 million advance.

30. Conagen has repeatedly promised to return the $10 million advance but has not done so to date, despite repeated requests from Givaudan.

## COUNT 1
## BREACH OF CONTRACT

31. All foregoing paragraphs in this Complaint are incorporated by reference into this Count.

32. The Term Sheet was a binding preliminary agreement that included an express obligation to negotiate in good faith.

33. This express obligation to negotiate in good faith was a material term of the Term Sheet.

34. Key Term 2 was also a material term of the Term Sheet.

35. Conagen's proposed term requiring Givaudan to develop immature intellectual property that was not ready for commercialization as a condition of exclusivity was inconsistent with Key Term 2.

36. After Givaudan rejected this proposed term as not in conformance with Key Term 2, Conagen refused to negotiate any further to achieve the purposes and other Key Terms set forth in the Term Sheet.

37. Upon information and belief, Conagen's refusal to negotiate in a manner consistent with the Term Sheet was motivated by the improper purpose of retaliating against Givaudan for its decision not to make additional investments in Mr. Chen's other companies.

38. Conagen's decision to stand down was a breach of its express obligation to negotiate in good faith.

39. Givaudan has been injured by Conagen's breach of its obligation in an amount to be proven at trial, but no less than $10 million plus the amounts expended in furtherance of negotiations under the Term Sheet and as a result of Conagen's breach, including without

limitation Givaudan's attorneys' fees in connection with negotiating and drafting agreements under the Term Sheet.

## COUNT 2
## PROMISSORY ESTOPPEL

40. All foregoing paragraphs in this Complaint are incorporated by reference into this Count.

41. The Term Sheet represented Conagen's promises to negotiate in good faith to reach agreements with Givaudan incorporating the Key Terms of the Term Sheet, including without limitation intellectual property licensing agreements consistent with Key Term 2.

42. Conagen expected, reasonably should have expected, and/or intended that its promises represented in the Term Sheet would induce Givaudan to pay the $10 million advance and to expend efforts and costs in furtherance of negotiating agreements under the Term Sheet.

43. Conagen's promises did in fact induce Givaudan to pay the $10 million advance and to expend efforts and costs in furtherance of negotiations under the Term Sheet.

44. Givaudan reasonably relied on Conagen's promises to its detriment in paying the $10 million advance and expending efforts and costs in furtherance of negotiations under the Term Sheet.

45. Givaudan was injured by its reasonable reliance on Conagen's promises in an amount to be proven at trial, but no less than $10 million plus the amounts expended in furtherance of negotiations under the Term Sheet, including without limitation Givaudan's attorneys' fees in connection with negotiating and drafting agreements under the Term Sheet.

46. Injustice can only be avoided by enforcement of Conagen's promise or restitution of the amounts of Givaudan's injuries.

## COUNT 3
## UNJUST ENRICHMENT

47. All foregoing paragraphs in this Complaint are incorporated by reference into this Count.

48. Givaudan enriched Conagen by providing the $10 million advance payment, which was a corresponding impoverishment to Givaudan.

49. Givaudan paid the $10 million advance payment to Conagen, as contemplated by Key Term 1, under the reasonable expectation that the parties would negotiate in good faith to reach agreements incorporating the other Key Terms.

50. Conagen cannot have reasonably expected to retain the advance payment in the absence of the parties entering agreements incorporating the other Key Terms.

51. Because Givaudan and Conagen did not reach any agreement in relation to the other Key Terms, there is no justification for Conagen to retain the advance payment.

52. At no time has Conagen stated it expects or intends to retain, or has any right to retain, the advance payment. On the contrary, Conagen has repeatedly promised to return the advance payment but has not done so to date.

53. Givaudan has no adequate remedy at law, and equity requires restitution of the advance payment from Conagen to Givaudan to prevent Conagen's unjust enrichment.

## COUNT 4
## MONEY HAD AND RECEIVED

54. All foregoing paragraphs in this Complaint are incorporated by reference into this Count.

55. Conagen obtained the $10 million advance payment from Givaudan.

56. Givaudan provided Conagen with the advance payment in good faith and under the reasonable expectation that the parties would negotiate in good faith to reach agreements incorporating the other Key Terms.

57. Conagen accepted and retained the advance payment.

58. Because the parties failed to reach agreement, Givaudan has received no benefit in exchange for the advance payment.

59. Conagen has repeatedly promised to return the advance payment, but it has not done so to date.

60. Under the circumstances, in equity and good conscience, the advance payment should be returned to Givaudan.

## COUNT 5
## CONVERSION

61. All foregoing paragraphs in this Complaint are incorporated by reference into this Count.

62. Givaudan provided Conagen with the $10 million advance payment in good faith and under the reasonable expectation that the parties would negotiate in good faith to reach agreements incorporating the other Key Terms.

63. Conagen accepted and retained the advance payment.

64. The parties failed to reach agreements as contemplated, and Givaudan requested the return of the advance payment.

65. Conagen has repeatedly promised to return the advance payment, but it has not done so to date.

66. The advance payment is Givaudan's personal property, and Givaudan has a right to immediate possession of it.

67. Conagen had no right to possession of the advance payment after Givaudan requested that it be returned.

68. By retaining the advance payment after Givaudan requested that it be returned, as well as after Conagen promised that it would be returned, Conagen has intentionally and wrongfully exercised ownership, control or dominion over Givaudan's personal property.

69. Conagen's wrongful retention of the advance payment has deprived Givaudan of it, inconsistent with and in denial of Givaudan's right to it.

WHEREFORE, Givaudan demands judgment against Conagen:

a) Awarding Givaudan $10 million together with interest thereon from the date of Givaudan's payment to Conagen;

b) Awarding Givaudan the amounts expended by Givaudan in reliance on Conagen's promises and representation, including without limitation Givaudan's attorneys' fees in furtherance of negotiations under the Term Sheet, together with interest thereon, in an amount to be proven at trial;

c) Imposing a constructive trust on the $10 million representing the advance payment that has been wrongfully withheld by Conagen;

d) Awarding Givaudan the costs of suit and attorneys' fees incurred in this action in an amount to be proven at trial; and

e) Such other and further relief as the Court determines to be just and appropriate.

Dated: April 23, 2018

GOLDBERG SEGALLA LLP

By: _____
Christopher J. Belter
Matthew S. Trokenheim
711 3rd Avenue, Suite 1900
New York, New York 10017-4013
Phone: 646.292.8700
Fax:  646.292.8701
cbelter@goldbergsegalla.com
mtrokenheim@goldbergsegalla.com

*Attorneys for Plaintiff Givaudan SA*