**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GIVAUDAN SA,                                  :

                    **Plaintiff,**     :          **18-CV-03588 (JGK)**

                           :          **ORAL ARGUMENT**
v.                                            :          **REQUESTED**

                           :

CONAGEN INC.,                                 :

                    **Defendant.**     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<br>

### MEMORANDUM OF LAW IN SUPPORT OF CONAGEN INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT

<br>

Martin J. Black (*pro hac vice*)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel. (215) 994-4000
martin.black@dechert.com

Katherine A. Helm
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
khelm@dechert.com

*Attorneys for Defendant Conagen Inc.*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................. 2

III. ARGUMENT ...................................................................................................... 4

    A.      Givaudan Fails to State a Claim for a Breach of Contract ..................................... 5

         1.      Failure to Plead a Contractual Duty ............................................. 5

         2.      Failure to Plead Facts Supporting a Claim of Bad Faith ........................... 7

         3.      No damages ................................................................................ 9

    B.      Plaintiff Improperly Pleads Claims for Promissory Estoppel, Unjust Enrichment, Money Had and Received, and Conversion ..................................... 9

         1.      Givaudan's Promissory Estoppel Claim (Count 2) Is Legally Incompatible With Its Breach of Contract Claim ................................... 10

         2.      Givaudan's Unjust Enrichment Claim (Count 3) Is Legally Incompatible With Its Breach of Contract Claim ................................... 12

         3.      Givaudan's Claim for Money Had and Received (Count 4) Is Legally Incompatible With Its Breach of Contract Claim ...................... 13

         4.      Givaudan's Claim for Conversion (Count 5) Is Legally Incompatible With Its Breach of Contract Claim ................................... 14

    IV. CONCLUSION .................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**

*Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533 (Del. 1996) ................................. 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 4, 5

*B&P Holdings I, LLC v. Grand Sasso, Inc.*, 114 F. App'x 461 (3d Cir. 2004) ............................ 7

*BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, No. C.A. 3099-VCN,

   2009 WL 264088 (Del. Ch. Feb. 3, 2009) ............................................................. 12

*Bakerman v. Sidney Frank Importing Co.*, No. Civ. A. 1844-N, 2006 WL 3927242 (Del. Ch. Oct.

   10, 2006) ........................................................................................ 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 4

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010) ........................................................... 4

*Cavi v. Evolving Sys., Inc.*, No. 15-1211, 2017 WL 658470 (D. Del. Feb. 17, 2017) ................. 11

*DV Realty Advisors LLC v. Policemen's Annuity and Ben. Fund of Chicago*, 75 A.3d 101 (Del.

   2013) ........................................................................................... 7

*Ergowerx Int'l, LLC v. Maxell Corp. of Am.*, 18 F.Supp.3d 430 (S.D.N.Y. 2014) ...................... 11

*Guthrie v. Hyatt*, 1 Del. 446 (Del. Super. Ct. 1834) ..................................................... 13

*In re General Motors LLC Ignition Switch Litig.*, 257 F.Supp.3d 372 (S.D.N.Y. 2017) ............ 12

*Khushaim v. Tullow Inc.*, No. N15C-11-212-PRW, 2016 WL 3594752 (Del. Super. Ct. June 27,

   2016) ........................................................................................... 14

*Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872 (Del. Ch. 2009) ..................................... *passim*

*Lord v. Souder*, 748 A.2d 393 (Del. 2000) .............................................................. 10

*Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010) ......................................................... 12

*Ramone v. Lang*, No. Civ. A 1592-N, 2006 WL 905347 (Del. Ch. Apr. 3, 2006) ...................... 10

*Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F.Supp.2d 423 (D. Del. 1999) ...................... 12

*Sharma v. TriZetto Corp*, No. 15-419-LPS, 2016 WL 1238709 (D. Del. Mar. 29, 2016) ............ 8

*SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330 (Del. 2013) ....................................... 6, 7, 11

*St. Search Partners, L.P. v. Ricon Int'l, L.L.C.*, No. Civ. A. 04C-09-156PLA, 2005 WL 1953094

    (Del. Super. Ct. Aug. 1, 2005) ........................................................................................ 13

*TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, No. N14C-12-112 WCC CCLD, 2015 WL

    5968726 (Del. Super. Ct. Sept. 25, 2015) ...................................................................... 11, 12

*W. Palm Beach Hotel, LLC v. Atlanta Underground, LLC*, 626 F. App'x. 37 (3d Cir. 2015) ....... 7

*Wright v. Wright*, 2 Del. 350 (Del. Super. Ct. 1838) .................................................................. 13

## <u>RULES</u>

Fed. R. Civ. P. 12(b)(6).............................................................................................................. 1

Instead of amending to correct the flaws in its original Complaint, Plaintiff Givaudan SA ("Givaudan") made cosmetic changes and then refiled the same claims.  Because the Amended Complaint suffers from the same defects as the original Complaint, Defendant Conagen, Inc. ("Conagen") respectfully requests that the Court dismiss the Amended Complaint with prejudice pursuant to Federal Rule Of Civil Procedure 12(b)(6).

## I.  INTRODUCTION

Givaudan and Conagen are business partners, and their relationship is governed by contract.  This action arises out of Givaudan's claim that Conagen breached a "binding preliminary agreement" entered into on September 16, 2016 (the "Term Sheet").  Declaration of Katherine A. Helm at Exhibit A.  The Term Sheet required Givaudan to remit $10 million to Conagen in exchange for 5% of the equity in the company.  Within a week of executing the agreement, Givaudan duly performed by wiring the money to Conagen.  While the Term Sheet contains provisions contemplating negotiations over further arrangements, it has no clawback provision allowing Givaudan to reverse the stock transaction.  Accordingly, Count 1 fails to state a claim for the "return" of the $10 million payment, much less the creation of a constructive trust over the funds as requested in the prayer for relief.

The remaining counts allege four economic torts that are duplicative of and legally incompatible with the breach of contract claim: promissory estoppel (Count 2), unjust enrichment (Count 3), money had and received (Count 4), and conversion (Count 5).  It is well established under the governing Delaware law that Givaudan cannot plead a contract breach and

at the same time pursue these claims.  Accordingly, these four counts should be dismissed with prejudice.

## II.  FACTUAL BACKGROUND

Conagen is a Massachusetts corporation with a principal place of business in Bedford, Massachusetts.  Am. Compl., Dkt. No. 21, ¶ 2.  Conagen researches and develops bio-manufacturing processes and techniques.  *Id*.  Givaudan is a company organized under the laws of Switzerland, with its principal place of business in Vernier, Switzerland.  *Id*. ¶ 1. Givaudan is an international manufacturer of flavors, fragrances and active cosmetic ingredients. *Id.*

Conagen and Givaudan have been working together since 2013 when Givaudan and Blue California Group, of which Conagen is a member, entered into a joint research and development agreement.  Ex. A at Background.  In 2014, Givaudan and Phyto Tech Corp., an affiliate of Conagen, formed a joint venture company, BGN Tech LLC (the "LLC Agreement").  Am. Compl. at ¶ 10.  And in 2015, Givaudan invested $10 million in Conagen in exchange for a 5% equity interest in Conagen.  *Id*. at ¶ 13.  .

In 2016, the parties entered into negotiations over expanding their relationship, resulting in the execution of the Term Sheet, which is the subject of this dispute.  Ex. A at Background. The first paragraph of the Term Sheet identified the parties and stated Givaudan was taking an equity stake in Conagen:

> "This Term Sheet ("Term Sheet") is between the "Blue California Group",
> including Phyto Tech Corp. and its affiliate Conagen Inc. ("Conagen") and

Givaudan SA ("Givaudan"), in regards to Givaudan taking an equity stake in Conagen."

*Id*. at Preamble

The second paragraph stated that the parties envisioned at that time that they would negotiate in good faith over "one or more agreements", the terms of which would be "similar to those detailed below":

> "The parties currently envision that they will negotiate in good faith and enter into one or more agreements which will contain terms and conditions similar to those detailed below and other terms and conditions to be negotiated between the parties."

*Id*.

The parties noted that the Term Sheet would be succeeded by executed agreements, <u>if any</u>, indicating the understanding that there might be no further agreements:

> "This Term Sheet will be succeeded by the terms and conditions of the executed agreements, if any."

*Id*.

The Term Sheet contained a list of Key Terms, the first of which was that Givaudan would invest an additional $10 million for an additional 5% of Conagen and that Conagen would make certain internal adjustments to its operations.  Am. Compl. at ¶¶ 16-17 (citing to Key Term 1).  There is no clawback provision in the agreement requiring the parties to reverse the stock transaction should they fail to execute additional agreements.  Givaudan pleads that it wired $10 million shortly after executing the agreement and that it received a stock certificate evidencing its 5% ownership. *Id*. at ¶¶ 22, 31-32.  Givaudan does not plead (because it cannot do so) that it has returned the certificate.

Key Terms 2 and 3 of the Term Sheet govern the rights to "specified IP" and the compensation for those rights, but the provisions have little in the way of specifics.  Key Term 3

is an agreement to agree on the licensing terms for the specified IP, but has no price terms.  It simply states:

> "3. The parties will agree on licensing terms for the commercial exploitation of the specified IP by Givaudan."
>
> Ex. A at ¶ 3.

Finally, the parties agreed in Key Term 6 to incorporate portions of the LLC Agreement. As a result, Delaware law applies to the Term Sheet and any claims relating to or arising out of it.  *Id*. ¶¶ 20-21.

Following execution of the Term Sheet, the parties began the contemplated negotiations over further agreements; however, no additional agreements were executed.  *Id*. at ¶ 30. Givaudan claims that Conagen stopped negotiating with Givaudan in November 2016.  For purposes of this motion, Conagen must accept this allegation (untrue though it is).

### III.  ARGUMENT

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In considering the plausibility of a claim, the Court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in favor of the plaintiff.  *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010).  Notably, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at 545.  The

- 4 -

Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

The Term Sheet incorporates "the law and jurisdiction clauses agreed between the parties in the Limited Liability Company Agreement [the "LLC Agreement"] of BGN Tech…." Am. Compl. ¶ 20. The LLC Agreement includes a Delaware choice-of-law provision, stating that "all claims and causes of action (whether in contract, tort, or otherwise) shall be governed by and shall be construed in accordance with the laws of the State of Delaware…." *Id*. ¶ 11. Thus, the Term Sheet is governed by Delaware law, as are all counts in the Amended Complaint.

**A.      Givaudan Fails to State a Claim for a Breach of Contract**

The elements of a breach of contract claim are: (1) existence of a contract (2) breach and (3) resulting damages. *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del Ch. 2009). Givaudan has pled the existence of a contract but failed to adequately plead breach or resultant damages.

**1.      Failure to Plead a Contractual Duty**

Givaudan asserts that the Term Sheet "was a binding preliminary agreement that included an express obligation to negotiate in good faith." *Id*. ¶ 46. Givaudan cites to no such "express obligation" and instead quotes language in the preamble stating the parties "currently envision that they will negotiate in good faith and enter into one or more [agreements]…" Am. Compl. ¶ 15. The agreement states that further agreements may be executed "if any". Ex. A at Preamble. These provisions do not constitute an express agreement to negotiate.

In an effort to plead around this problem, Givaudan alleges that "entering into agreements that contain terms and conditions embodying all of the Key Terms of the Term Sheet was a material term of the Term Sheet." Am. Compl. at ¶ 53. This is manifestly not so. There is no

such term in the Term Sheet.  Nor is there a provision giving Givaudan an option to reverse the stock purchase if it was unhappy with the negotiations.  The Term Sheet states plainly that the parties will exchange $10 million for 5% of Conagen's equity and then attempt to negotiate additional agreements.  Givaudan obviously understood that to be the case, as it wired the money to Conagen before drafts of the ancillary agreements had even been exchanged.

Delaware does recognize that, in some limited circumstances, "where parties agree to negotiate in good faith in accordance with a term sheet, that obligation to negotiate in good faith is enforceable."  *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 333-34 (Del. 2013).  In *SIGA Techs.*, the parties exchanged a proposed term sheet concerning a license agreement for an antiviral drug.  *Id*. at 334-35.  Later, the parties expressly incorporated that license agreement term sheet into two subsequent agreements between the parties involving a loan and a potential merger.  *Id*. at 337-38.  The express contractual language of those agreements "obligated the parties to 'negotiate in good faith with the intention of executing a definitive License Agreement in accordance with the terms set forth in the' [term sheet]."  *Id*. at 345.  The Court found that the incorporation of the term sheet into the subsequent agreements reflected an intent on the part of both parties to negotiate towards a final agreement.  *Id*. at 346.

Here, there is no basis, alleged or otherwise, to impose such an obligation on Conagen. There is no subsequent agreement that incorporates Key Terms 2 and 3 into a broader agreement. Nor is there any express provision in the Term Sheet creating s a binding obligation to negotiate in good faith towards a final agreement.  The preamble of the Term Sheet is an expectation and hope.  The fact that no final agreement was reached does not demonstrate the either party failed

to discharge a preexisting contractual duty to negotiate.  *B&P Holdings I, LLC. v. Grand Sasso, Inc.*, 114 F. App'x. 461, 466 (3d Cir. 2004).

### 2.  Failure to Plead Facts Supporting a Claim of Bad Faith

Even if Conagen owed a duty of good faith to negotiate, the Amended Complaint fails to allege facts sufficient to support a claim for breach.  In Delaware, evaluation of whether a party breached a duty of "good faith" generally requires demonstrating "bad faith."  *DV Realty Advisors LLC v. Policemen's Annuity and Ben. Fund of Chicago*, 75 A.3d 101, 110 (Del. 2013); *see also W. Palm Beach Hotel, LLC v. Atlanta Underground, LLC*, 626 F. App'x. 37, 42-43 (3d Cir. 2015) (noting that to breach a duty to negotiate in good faith generally requires "deliberate misconduct").  Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will."  *SIGA Techs.*, 67 A.3d at 346.

Givaudan's only allegation concerning bad faith relates to a supposed connection between Givaudan's desire not to further invest in Steven Chen's other companies and the termination of negotiations.  Am. Compl. ¶¶ 28-30, 52.  But there is no indication here of "dishonest purpose of moral ubiquity" or "furtive design or ill will."  *SIGA Techs.*, 67 A.3d at 346.  A mere message from Conagen's outside counsel that it was standing down cannot be sufficient to infer that Conagen was acting in bad faith.  Am. Compl. at ¶ 29.  And Givaudan conclusorily alleges that Conagen stood down with an allegedly "improper purpose of retaliating against Givaudan" for decisions Givaudan made not to invest in related companies.  ¶ 52.  That is a far cry from the type of dishonesty required to sustain proof of bad faith.  Here, the parties had multiple preexisting relationships.  If, as Givaudan alleged, Conagen decided not to expand

its relationship with Givaudan because Givaudan had reneged on other commitments to Conagen affiliates, that is not bad faith; indeed, it shows good business sense.

In *Kuroda*, the plaintiff alleged that the defendants had interfered with contractual relations as part of "a campaign of personal retaliation" to protect their personal reputations and interests and to enrich themselves at plaintiff's expense. *Id.*  Despite Kuroda's contention that a factual dispute had been raised that could not be resolved on a motion to dismiss, the court disagreed and dismissed the complaint, noting that "[t]he Court is not required to accept mere conclusory allegations as true, and Kuroda's claims that [Defendants] acted because of a personal agenda, without more, do not adequately allege" the claim. *Id.*

*Sharma v. TriZetto Corp.* is also instructive.  No. 15-419-LPS, 2016 WL 1238709 (D. Del. Mar. 29, 2016).  There, as part of a stock purchase agreement contemplating subsequent transactions between the parties, the parties had an obligation to negotiate in good faith to determine how to divide future revenues.  *Id.* at *1.  When negotiations broke down, the plaintiffs sued and alleged, among other things, that the defendant had violated its duty to negotiate in good faith.  *Id.* at *2.  The Court dismissed the claim, finding that the plaintiffs had not alleged facts sufficient to demonstrate a lack of good faith negotiations.  *Id.* at *4. Specifically, although the plaintiffs had alleged that the defendant had withheld relevant details during the negotiations, they failed to allege facts showing that this amounted to a failure of good faith.  *Id.*  As in *Sharma* and *Kuroda*, Givaudan's unsupported conclusions fail to sustain a breach of contract claim.

### 3.      No damages

Any damages for breach of contract must be the proximate cause of the alleged breach –
here, the purported failure to negotiate in good faith over ancillary agreements.  Givaudan fails to
point to any damages flowing from that alleged breach.

Instead, Givaudan provides a conclusory statement that it is entitled to $10 million in
damages and then asks for a constructive trust on the $10 million it paid for Conagen equity.
Am. Compl. at ¶ 54.  What Givaudan is really trying to do is to rewrite Key Term 1, which was
fully performed, to create a clawback right.  That is impermissible.  Key Term 1 provided that
Givaudan would invest an additional $10 million *for an additional five percent equity stake in
Conagen*. *Id*. ¶ 16.  Conagen performed Key Term 1, and there is no allegation otherwise.
Givaudan's claim arises under Key Terms 2 and possibly 3, but there is no logical connection
between the claim it has pled – breach of the duty to negotiate ancillary agreements – and the
$10 million in damages it seeks.  Because Givaudan has failed to articulate any contractual
benefit it was denied as a result of Conagen's alleged breach of the preamble "good faith"
language, its claim for breach of contract must be dismissed.  *See e.g. Kuroda* at 883-84
(dismissing breach of contract claim where plaintiff failed to allege the essential element of
damages).  At the minimum, the Court should dismiss any claim for return of the $10 million
paid by Givaudan and the request for a constructive trust pled in the request for relief.

**B.     Plaintiff Improperly Pleads Claims for Promissory Estoppel, Unjust Enrichment,
Money Had and Received, and Conversion**

Givaudan pleads that the Term Sheet is a "binding preliminary agreement" between the
parties that gave rise to an express contractual obligation.  Am. Compl. ¶ 46.  This allegation is
incorporated into every count in the Amended Complaint.  *Id.* ¶¶ 55, 62, 69, 77.  Under Delaware
law, causes of action for conduct sounding in tort cannot be maintained when there is a valid,

contractual relationship between the parties.  *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009).  "Thus, in order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract."  *Id.*

Here, there is no such independent duty.  All of Givaudan's tort claims are essentially breach of contract claims in disguise.  The claims are all based on the same core allegations: that Givaudan gave $10 million to Conagen pursuant to the Term Sheet, Conagen violated a duty to negotiate in good faith, and Givaudan wants to clawback the payment..  Am. Compl. ¶ 58 ("Conagen's promises did in fact induce Givaudan to pay the $10 million advance and to expend efforts and costs in furtherance of negotiations under the Term Sheet"), ¶ 64 ("Givaudan paid the $10 million advance payment, to Conagen under the reasonable expectation that the parties would negotiate in good faith to reach all of the agreements contemplated in the Term Sheet"), ¶ 71 ("Givaudan provided Conagen with the advance payment in good faith and under the reasonable expectation that the parties would negotiate in good faith to reach all of the agreements incorporating the other Key Terms … "), ¶ 78 (same) (all emphasis added).  As Givaudan explicitly pleads that a contract governs its relationship with Conagen, its non-contractual causes of action fail as a matter of law.

1.    **Givaudan's Promissory Estoppel Claim (Count 2) Is Legally Incompatible With Its Breach of Contract Claim**

Promissory estoppel is a doctrine for the prevention of injustice.  *Lord v. Souder*, 748 A.2d 393, 398 (Del. 2000).  The doctrine is seen as "a consideration substitute for promises which are reasonably relied upon, but which would otherwise not be enforceable."  *Id.* at 400 (emphasis added).  *See also Ramone v. Lang*, No. Civ. A 1592-N, 2006 WL 905347, at *14 (Del. Ch. Apr. 3, 2006) ("But promissory estoppel is fundamentally a narrow doctrine … the more

routine role of [which] should be to assure that those who are reasonably induced to take injurious action in reliance upon non-contractual promises receive recompense for that harm") (emphasis added).

Delaware law is clear that "[p]romissory estoppel does not apply…where a fully integrated, enforceable contract governs the promise at issue." *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013); *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, No. N14C-12-112 WCC CCLD, 2015 WL 5968726, at *5 (Del. Super. Ct. Sept. 25, 2015) (dismissing claim of promissory estoppel where a contractual agreement governed the parties' relationship); *Cavi v. Evolving Sys., Inc.*, No. 15-1211, 2017 WL 658470, at *10 (D. Del. Feb. 17, 2017) (dismissing claim for promissory estoppel under Delaware law when an express agreement was alleged to exist between Plaintiff and Defendants); *see also Ergowerx Int'l, LLC v. Maxell Corp. of Am.*, 18 F.Supp.3d 430, 442 (S.D.N.Y. 2014) (dismissing claim of promissory estoppel under New Jersey law when a contract governed the claims and the count was "devoid of facts that would distinguish it from a breach of contract claim").

Here, Givaudan pleads in its count for promissory estoppel that a "binding preliminary agreement"—the Term Sheet—governs the relationship between the parties.  Am. Compl. ¶¶ 46, 55-56.  Counts 1 and 2 are duplicative: both plead that an obligation to negotiate in good faith (*id.* ¶¶ 46-47, 55) caused Givaudan to pay money (*id.* ¶¶ 54, 57-58) which injured Givaudan (*id.* ¶¶ 54, 60).  To re-plead an "express obligation" as a "promise" is merely a legal conclusion couched as a factual allegation.  The so-called "promises to enter all of the agreements represented in the Term Sheet" (*id.* ¶ 57) cannot form the basis for a promissory estoppel claim.

Count 2 should be dismissed as duplicative of and legally incompatible with Givaudan's breach of contract claim.

### 2. Givaudan's Unjust Enrichment Claim (Count 3) Is Legally Incompatible With Its Breach of Contract Claim

Unjust enrichment in Delaware is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). A claim for unjust enrichment is not available if there is a contract that governs the relationship between the parties that gives rise to the unjust enrichment claim. *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009). "[W]hen the complaint alleges an express, enforceable contract that controls the parties' relationship…a claim for unjust enrichment will be dismissed." *Id.* (quoting *Bakerman v. Sidney Frank Importing Co.*, No. Civ. A. 1844-N, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006)). *See also TrueBlue*, 2015 WL 5968726 at *5 (dismissing claim for unjust enrichment due to the existence of a contract); *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, No. C.A. 3099-VCN, 2009 WL 264088, at *8 (Del. Ch. Feb. 3, 2009) (dismissing claim for unjust enrichment which was pled as an alternative to a contract claim when there was no independent basis for the unjust enrichment claim); *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 439-40 (D. Del. 1999) (dismissing claim of unjust enrichment under Delaware law where the plaintiff alleged it had entered into a valid agreement with defendants, as one cannot pursue an unjust enrichment theory of recovery where a contract exists); *In re General Motors LLC Ignition Switch Litig.*, 257 F.Supp.3d 372, 434-35 (S.D.N.Y. 2017) (dismissing claim of unjust enrichment under New York law in light of the fact that "an

unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim")

In its unjust enrichment claim, Givaudan alleges that its relationship with Conagen is governed by a binding agreement—the Term Sheet.  Am. Compl. ¶¶ 46, 62, 64.  Accordingly, the claim for unjust enrichment fails as a matter of law and should be dismissed.

### 3.  Givaudan's Claim for Money Had and Received (Count 4) Is Legally Incompatible With Its Breach of Contract Claim

"Money had and received" refers to an old tort, in which "a person receives money belonging to another, and has no legal or equitable right to retain it …."  *Wright v. Wright*, 2 Del. 350 (Del. Super. Ct. 1838).  This claim "is an ancient cause of action subsumed by modern law regarding breach of contract."  *St. Search Partners, L.P. v. Ricon Int'l, L.L.C.*, No. Civ. A. 04C-09-156PLA, 2005 WL 1953094, at *1 (Del. Super. Ct. Aug. 1, 2005).   Further, "money had and received" requires that the defendant did not use the money for an agreed purpose.  *Id.* (citing *Guthrie v. Hyatt*, 1 Del. 446 (Del. Super. Ct. 1834) and dismissing count for money had and received when the complaint made no such allegation, but only protested the defendant's failure to repay).

Count 4 alleges that Givaudan voluntarily transferred money to Conagen pursuant to an agreement, not that Conagen lacked legal or equitable title to the funds.  Nor does the Amended Complaint allege that Conagen was obligated to use the monies for a particular purpose and instead used the funds for another purpose.  As in *St. Search Partners*, the gravamen of Givaudan's claim is one for breach of contract, and the duplicative "monies had and received" claim should be dismissed.

**4.      Givaudan's Claim for Conversion (Count 5) Is Legally Incompatible With Its Breach of Contract Claim**

Conversion is an act of dominion wrongfully exerted over the property of another, in denial of their right or inconsistent with it.  *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996).  "Where, however, the plaintiff's claim arises solely from a breach of contract, the plaintiff generally must sue in contract, and not in tort."  *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009).  Thus, to assert a claim for conversion alongside a claim for breach of contract, the plaintiff must generally allege that the defendant violated an independent legal duty apart from that imposed by contract.  *Id.* (dismissing claim for conversion when the complaint fails to identify the interference with a right independent of rights under the contract).  *See also Khushaim v. Tullow Inc.*, No. N15C-11-212-PRW, 2016 WL 3594752, at *7-8 (Del. Super. Ct. June 27, 2016) (dismissing claim for conversion where the complaint lacked any substantive allegation that defendant violated a duty independent from the contract).

Once again, Givaudan alleges in its claim for conversion that there is a "binding preliminary agreement" between the parties that creates express obligations for Conagen to negotiate further agreements in good faith.  Am. Compl. ¶¶ 46, 77-78.  Givaudan does not allege any extra-contractual duty and that is fatal.  *Id.* ¶ 78.  Givaudan cannot convert its contact claim into a conversion claim through artful pleading.  Count 5 should be dismissed.

In summary, under Delaware law Givaudan cannot maintain any of the aforementioned tort claims alongside a breach of contract claim.  Counts 2-5 are all based on the same underlying allegation of contractual breach and should all be dismissed.

- 14 -

## IV.  CONCLUSION

For all of the foregoing reasons, Conagen respectfully requests that the Court dismiss

Plaintiff's Complaint in its entirety.


Dated: October 29, 2018

Respectfully submitted,

By: ___*/s/ Martin J. Black*___

Martin J. Black (*pro hac vice*)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel. (215) 994-4000
martin.black@dechert.com

Katherine A. Helm
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
khelm@dechert.com

*Attorneys for Defendant Conagen Inc.*

- 15 -